IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOROTHY WINSLOW                :

                              :

     v.                       :   Civil Action No. DKC 09-0071

                              :

GARY LOCKE[1]                 :

                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this retaliation action is a motion to dismiss or, alternatively, for summary judgment filed by Defendant Gary Locke, Secretary of the United States Department of Commerce.  (Paper 5).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendant's motion will be granted.

**I.   Background**

The following facts are either uncontroverted or construed in a light most favorable to Plaintiff.  At all times relevant, Plaintiff was employed as a Program Analyst in the Office of the Associate Director for Communications ("the Directorate") within the United States Census Bureau, a sub-agency of the United

_____

[1] Plaintiff originally filed this action against Carlos M. Gutierrez, the former Secretary of the United States Department of Commerce.  Gary Locke, Mr. Gutierrez's successor, will be substituted as the proper defendant pursuant to Fed.R.Civ.P. 25(d).

States Department of Commerce ("the Agency").  The majority of her responsibilities in that capacity related to human resources activities within the Directorate, such as assembling job vacancy packages, preparing for interviews, and serving as the final reviewing point before vacancy packages were submitted to the Agency's Human Resources Office ("HRO").  To complete these tasks, Plaintiff relied on the use of certain human resources databases, such as the Census Human Resources Information System ("CHRIS") and Personnel Action Request System ("PARS").

From April 2006 to November 2007, Plaintiff's immediate supervisor was Dr. Jay Keller, Assistant to the Associate Director of Communications.  Dr. Keller was reassigned to a position outside the Directorate in late November 2007.  Burton Reist replaced him in early December 2007.  Ruth Cymber, Associate Director of Communications, directly supervised Dr. Keller and Mr. Reist and was Plaintiff's second-line supervisor.

In November 2007, Dr. Keller advised Plaintiff that Megan Kindelan, an employee working in the Directorate's Public Information Office, would be filing a complaint of sexual harassment against him with the Agency's HRO.  Plaintiff immediately pledged her support to Dr. Keller.  "In a series of e-mails from November 22, 2007[,] to November 27, 2007, [she] acted as a sounding board for her colleague," allowing him to "vent his frustration while at the same time letting [him] know

that she would stand by him." (Paper 1, ¶ 9). Plaintiff also advised Dr. Keller to retain an attorney and offered to speak with Ms. Cymber on his behalf.

The critical event for purposes of Plaintiff's claim was a conversation occurring between Plaintiff and Ms. Cymber on or about November 26, 2007. As Plaintiff describes it, she and the Associate Director "had a discussion . . . regarding Dr. Keller's alleged sexual harassment," during which "Ms. Cymber stated that she [had] lost all confidence in Dr. Keller," and Plaintiff "responded that Ms. Cymber had pre-judged Dr. Keller, Ms. Cymber did not have all the facts, and Dr. Keller did nothing wrong." (Paper 15, at 4). Plaintiff additionally provided Ms. Cymber with copies of her email exchanges with Dr. Keller and made clear that she would be supporting him during the investigative process. At Plaintiff's request, Ms. Cymber gave the emails to the Agency's HRO. (Paper 5, Ex. 6 at 2).

Following her discussion with Ms. Cymber, Plaintiff observed that her supervisors began treating her differently and her job responsibilities significantly changed. Although nothing was said to her, Plaintiff asserts that "there were meetings [she] attended where [she] got the 'evil eye' and silent treatment." (Paper 15, Ex. 5 at 2). Around this time, the Directorate was in the final stages of hiring two temporary employees for the Decennial Census, a process in which Plaintiff

was to serve an integral role.  On November 30, 2007, however, Ms. Cymber abruptly canceled interviews with two external candidates and selected two internal candidates for the positions, thereby "denying [Plaintiff her] usual role" in the process.  (*Id*. at 4).  On December 5, 2007, a co-worker told Plaintiff that Kenneth Meyer, Chief of the Directorate's Public Information Office, had instructed him to no longer send vacancy documents to Plaintiff.  Plaintiff later discovered this decision was made by Ms. Cymber.  The following day, Plaintiff learned that a "PARS action was submitted through the Administrative Office for a detail within the Directorate" without going through her, as it typically would have.  (Paper 15, at 6).  At around the same time, Plaintiff's access to the CHRIS database was removed, which severely impaired her ability to complete human resource-related assignments.

Plaintiff believed these events were orchestrated by Ms. Cymber as retaliation for her stated intent to support Dr. Keller during the Agency's internal investigation.  On December 6, 2007, Plaintiff reported this concern to the Agency's EEO office.  Her EEO caseworker subsequently called Ms. Cymber and spoke to her about Plaintiff's allegations.[2]  Soon thereafter,

---

[2] Although Plaintiff alleges two retaliatory acts occurring after she first made contact with the EEO office, she does not claim that they were in any way related to her EEO activity.

Plaintiff met with Ms. Cymber and told her she was "feeling ill coming to work and how unbearable things are," but no resolution occurred.   (Paper 15, Ex. 5 at 7).   On at least two other occasions – specifically, December 10, 2007, and January 4, 2008 – human resources-related tasks in the Directorate were again completed without going through Plaintiff.   On January 22, 2008, Plaintiff filed a formal EEO complaint alleging that her supervisors were making her "role regarding [Human Resources] matters . . . [more] marginal with the managers" as retaliation for her support of Mr. Keller during the internal investigation of Ms. Kindelan's sexual harassment complaint, citing the above-described incidents.   (Paper 15, Ex. 7).

Meanwhile, the Agency's internal investigation of Ms. Kindelan's complaint had commenced.   On January 22, 2008, Plaintiff met with the investigator and provided a statement in support of Dr. Keller.   (Paper 15, Ex. 4 at 1).   Ms. Kindelan filed a formal complaint with the EEO on March 3, 2008; the EEO investigation of her allegations was conducted from April 23, 2008, through August 15, 2008; and Plaintiff provided a sworn statement in that investigation on July 7, 2008.   (Paper 5, Ex. 7 at 2).   Ms. Kindelan's EEO investigation was ultimately settled prior to the time a final decision was issued.

In Plaintiff's EEO case, the Agency issued a final decision on November 18, 2008, finding that she had failed to establish

her retaliation claim and advising her of the right to sue. (Paper 15, Ex. 4).   On January 14, 2009, Plaintiff filed a complaint in this court alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  (Paper 1).  Defendant responded, on May 8, 2009, by filing a motion to dismiss or, alternatively, for summary judgment, which is presently before the court.  (Paper 5).

## II.  Standard of Review

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment under Fed.R.Civ.P. 56.   A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where, as here, the parties present matters outside of the pleadings and the court considers those matters, it must treat the motion as one for summary judgment.  *See Gadsby v. Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).   In other words, if there clearly exists

factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.   *See Scott v. Harris*, 550 U.S. 372 (2007); *Emmett*, 532 F.3d at 297.   A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.   *Celotex Corp.*, 477 U.S. at 323.   "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*.   Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.   *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.   "A mere scintilla of proof, however, will not suffice to prevent summary judgment."   *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."   *Anderson*, 477 U.S. at 249.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## III. Analysis

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3) the protected activity was causally connected to the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (citing *Beall v. Abbott Labs*, 130 F.3d 614, 619 (4th Cir. 1997)). The plaintiff's burden in this regard is "not onerous," but each element must be proven by a preponderance of the evidence. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Only if the plaintiff succeeds in making this showing does the burden then shift to the employer to offer a legitimate, non-discriminatory basis for the adverse employment action. *See Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). If that showing is made, the plaintiff must demonstrate that the reason proffered by her employer for the adverse action is pretextual. *Id.; see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII").

Here, Defendant contends that he is entitled to summary judgment because Plaintiff cannot, as a matter of law, make the required showing as to any of the three elements of the *prima facie* analysis. Because the court agrees that Plaintiff cannot demonstrate that the retaliatory acts she alleges occurred in response to her participation in an activity protected under Title VII, Defendant's motion will be granted.

Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Protected activity of an employee, therefore, can take the form of either opposing a practice prohibited under Title VII (pursuant to the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). In this case, Plaintiff does not contend that she engaged in any activity protected by the opposition clause. Rather, she asserts in her complaint that she "is a member of a protected class" under Title VII because she "participat[ed] in an EEOC investigation." (Paper 1, ¶ 15). More specifically, she claims that her involvement in the

internal   investigation   that   preceded   the   filing   of   Ms.
Kindelan's formal EEO complaint was "a form of participation in
an EEOC investigation . . . sufficient to bring [her] within the
protection of the participation clause." (Paper 15, at 11-12).

It is critical, however, to identify precisely the manner
in which Plaintiff participated in the internal investigation
and the timing of her participation in relation to the alleged
acts of retaliation.  Plaintiff's motion papers are vague with
respect to these issues.  She asserts in conclusory fashion that
she "participated in an internal investigation of Dr. Keller on
or around November 2007" (paper 15, at 4), citing as support the
ninth paragraph of her complaint.  That paragraph states:

> In November 2007, Dr. Keller, Mrs.
> Winslow's supervisor, became the subject of
> a Census Bureau investigation for sexual
> harassment.  Ms. Megan C. Kindelan accused
> Dr. Keller of inappropriate behavior,
> prompting an investigation.  Mrs. Winslow
> decided to help Dr. Keller lawfully
> vindicate his name.  In a series of e-mails
> from November 22, 2007[,] to November 27,
> 2007, Mrs. Winslow acted as a sounding board
> for her colleague.  She gave him advice, but
> more importantly, she gave Dr. Keller an
> opportunity to vent his frustration while at
> the same time letting Dr. Keller know that
> she would stand by him.  Mrs. Winslow's
> support ranged from advising Dr. Keller to
> retain an attorney to offering to speak with
> Ms. Ruth Cymber (Dr. Keller's supervisor) on
> his behalf.

(Paper 1, ¶ 9).  Offering to support a colleague in a future
investigation, however, clearly does not amount to making a

10

charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. Indeed, it is unclear whether Ms. Kindelan had lodged her internal complaint by that point, and even if she had, it is uncontroverted that the internal investigation did not commence for at least another month. (Paper 5, Ex. 1 at 2; Ex. 6 at 2). Moreover, the only parties who were privy to the described events were Plaintiff and Dr. Keller. An additional concern is that this alleged involvement is not set forth in any of the declarations provided by Plaintiff. A party opposing summary judgment is not permitted to "rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Although Plaintiff has provided her own declaration and that of Dr. Keller in support of her opposition papers, neither document attests to the allegations contained in the ninth paragraph of the complaint. Thus, Plaintiff "acting as a sounding board" for Dr. Keller at around the time Ms. Kindelan made her internal complaint with the Agency's HRO could not constitute a protected activity under the participation clause of Title VII.

Nor could the statement Plaintiff provided in support of Dr. Keller during the Agency's internal investigation or her

sworn testimony in the subsequent EEO investigation form the predicate for the alleged retaliatory acts. The retaliatory conduct Plaintiff alleged in her formal EEO complaint all occurred between November 30, 2007 – *i.e.*, the date she was bypassed in the selection process for two Decennial Census employees – and January 4, 2008 – *i.e.*, the date Mr. Meyer sought information directly from a Human Resources Specialist without going through her. The Agency's internal investigation did not commence until January 2008, and Plaintiff did not give her statement to the Agency investigator until January 23, the day after Plaintiff filed her formal EEO complaint. It is undisputed, moreover, that Ms. Kindelan did not file her EEO complaint, alleging sexual harassment against Dr. Keller, until March 3, 2008, and that Plaintiff gave sworn testimony in the Kindelan/Keller EEO investigation on July 8, 2008. (Paper 5, Ex. 7 at 2). Because the retaliatory conduct about which Plaintiff complains preceded the two dates on which she gave statements or testimony in relation to the sexual harassment investigations, that activity could not serve as the basis for her retaliation claims here. *See McCormick v. Verizon Maryland, Inc.*, No. 07-2399-RWT, 2009 WL 2449886, *9 (D.Md. Aug. 7, 2009) ("[w]hen the adverse employment action precedes the employee's protected activity, it is self-evident that there cannot be a causal relationship between the two events").

The only remaining act that could be protected is the November 26, 2007, discussion with Ms. Cymber in which Plaintiff made known her support for Dr. Keller and provided copies of emails from her former supervisor. Considering the facts in a light most favorable to Plaintiff, it is reasonable to conclude that Ms. Kindelan had made her complaint to the Agency's HRO by that point, and the acts of retaliation alleged by Plaintiff all appear to relate back to Ms. Cymber. Thus, the conversation in which Plaintiff made her second-level supervisor aware of her position with respect to the internal investigation that was about to occur and provided potential evidence to be used in that investigation, *i.e.*, the emails from Dr. Keller, was the only conceivable activity protected under Title VII. The question, then, is whether a co-worker's statement of intent to support a party accused of sexual harassment in an internal investigation that had not yet commenced, prior to the filing of a formal EEO complaint, could be construed as "assist[ing] or participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. The law does not provide an affirmative answer.

In *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999), the Fourth Circuit recognized that activities protected by the participation clause are "essential to the machinery set up by Title VII," and have, therefore, been

given "exceptionally broad protection." (internal citations and quotation marks omitted). The inclusion by Congress of the phrase "in any manner" in the participation clause makes clear that "the provision is meant to sweep broadly," and a "straightforward reading" of the statute "leads inexorably to the conclusion that all testimony in a Title VII proceeding is protected against punitive employer action." *Glover*, 170 F.3d at 414. Thus, it is the law of this circuit that "when an individual engages in activities constituting participation, such activity is protected conduct regardless of whether that activity is reasonable." *Cumbie v. General Shale Brick, Inc.*, 302 Fed.Appx. 192, 194 (4th Cir. 2008) (upnpublished) (citing *Glover*, 170 F.3d at 413-15).

The question here, however, is not whether the substance of the activity would fall under the broad protection of the participation clause; rather, it is whether the activity in question could constitute a protected activity under the clause where only an internal complaint has been made to the Agency. In fact, because of the absolute protection from employer retaliation conferred by the participation clause, courts have concomitantly limited the scope of activities constituting participation. A number of courts have held that the participation clause has no application in the context of an internal investigation where an EEOC complaint has not been

filed. *See, e.g., E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) ("[t]his clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC"); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("[a]ccusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril"); *Tuthill v. Consolidated Rail Corp.*, No. Civ. A. 96-6868, 1997 WL 560603, *4 (E.D.Pa. Aug. 26, 1997) ("Title VII's definition of 'protected activity' does not include participation in an internal investigation"), *aff'd* 156 F.3d 1255 (3rd Cir. 1998); *Morris v. Boston Edison Co.*, 942 F.Supp. 65, 71 (D.Mass. 1996) ("all the activity described as being protected under the participation clause relates to actions taken in outside, formal statutorily created proceedings"). Other courts have recognized a distinction between an internal investigation initiated in response to an internal complaint and one launched in response to a formal EEOC charge, finding the latter protected but the former unprotected under the participation clause. *See Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999) (where employer received a notice of charge of

15

discrimination from the EEOC, then launched an internal investigation, participation in the internal investigation was "a form of participation, indirect as it is, in an EEOC investigation")[3]; *see also* Deborah L. Brake, *Retaliation*, 90 Minn.L.Rev. 18, 77-78, n.198 (2005) ("There is some uncertainty as to which clause governs participation in an employer's own investigation of discrimination charges. The categorization largely turns on whether the employer's investigation responds to or is independent of the filing of an EEOC charge," comparing *Total Sys. Servs., Inc.*, 221 F.3d at 1174 (declining to extend participation clause protection where no EEOC charge was filed) with *Clover*, 176 F.3d 1346 (holding that the participation clause applies to participation in an internal investigation that follows notice of an EEOC charge)).

The common denominator in these cases is that the EEOC process must have commenced in order for an employee to claim protection under the participation clause. Only a handful of cases, including one from this court, have found that the participation clause could apply even where no EEOC charge was filed. *See Kralowec v. Prince George's County, Md.*, 503 F.Supp.

---

[3] Still, the *Clover* court noted that it had "no occasion to decide in this case whether the participation clause extends to cover an employee's participation in an investigation conducted by her employer before receiving a notice of charge of discrimination from the EEOC." *Clover*, 176 F.3d at 1353, n.3.

985, 1008 (D.Md. 1980) (county employee's filing of sex discrimination complaint with County Attorney and providing testimony during local administrative proceeding related to her discrimination claim was covered under the participation clause). The basis of the court's ruling in *Kralowec*, however, was that because Title VII's statutory scheme "encouraged deferral to state and local remedies," Congress must have intended the phrase "proceeding . . . under this subchapter" to include state or local administrative proceedings. *Id*. at 1008-09. Thus, it could have no application to the instant case.

While the Fourth Circuit has not specifically addressed this question, two cases are nevertheless instructive. In *Martin v. Mecklenburg County*, 151 Fed.Appx. 275 (4th Cir. 2005) (unpublished), a female county employee, Ms. Harris, filed an EEOC charge of sexual harassment against the county on the basis of a male supervisor's sexual harassment. The plaintiff, Mr. Martin, subsequently learned that the respondent in the EEO investigation had been involved in similar incidents in the past that were unreported and telephoned Ms. Harris' attorney to advise him of such. After the county's attorneys learned of this disclosure, they met with Mr. Martin; thereafter, he began to suffer a series of disciplinary actions, culminating in his termination, which formed the basis of his retaliation claim.

With regard to whether Mr. Martin's disclosure to Ms. Harris' attorney and meetings with the county attorneys were protected under the participation clause, the court found as follows:

> Clearly, Title VII protects from retaliation Martin's phone calls to [Harris' attorney] since they were made for the purpose of providing information in a pending Title VII proceeding – the Harris suit. "Title VII combats unlawful employment practices ... principally through reliance on employee initiative." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174-75 (2d Cir. 2005). Permitting retaliation based on an employee's *sua sponte* offer of information would impede voluntary participation by the most effective witnesses in Title VII actions, frustrating the statute's purpose to "ensure ... that investigators will have access to the unchilled testimony of witnesses." *Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999).
>
> Similarly, Title VII protects Martin's truthful statements to [the county attorneys] in February and May because Martin made those statements during the County's internal investigation in preparation for its defense in the Harris suit. *See Clover v. Total System Servs.*, Inc., 176 F.3d 1346, 1353 (11th Cir. 1999). It is of no moment that the content of Martin's statements – *i.e.*, his recounting of his conversation with Skidmore - arguably neither described an incident of sexual harassment nor bore any relevance to the Harris suit. In *Glover*, we held that the phrase "in any manner" in the participation clause is "a clear signal that the provision is meant to sweep broadly" to include even unreasonable and irrelevant activity. 170 F.3d at 414; *see also Deravin v. Kerik*, 335

> F.3d 195, 203 (2nd Cir. 2003) ("[T]he
> explicit language of [the] participation
> clause is expansive and seemingly contains
> no limitations."); *Clover*, 176 F.3d at 1353
> ("The words 'participate in any manner'
> express Congress' intent to confer
> exceptionally broad protection upon
> employees covered by Title VII." (internal
> quotation marks omitted)). Title VII
> protects Martin's truthful statements,
> regardless of their content, because they
> took place during a meeting that was
> directly related to a Title VII proceeding.

*Martin*, 151 Fed.Appx. at 279.

The language in *Martin* regarding protection of a "*sua sponte* offer of information" to ensure that "investigators will have access to the unchilled testimony of witnesses" reflects the breadth of protection under the participation clause. The fact that Plaintiff offered information to Ms. Cymber after Ms. Kindelan's internal report was made would appear to be protected, as any resultant retaliation could have had a chilling effect on Plaintiff's involvement in the ensuing investigation, if the participation clause had been triggered. The critical distinction between *Martin* and the instant case, however, is that protected activities in *Martin* related to the EEO charge filed by Ms. Harris. Indeed, the court's analysis on this point concludes with the definitive statement that Mr. Martin's statements were protected "because they took place during a meeting that was *directly related to a Title VII proceeding*." *Martin*, 151 Fed.Appx. at 279 (emphasis added). In

this respect, *Martin* places the Fourth Circuit directly in line with *Clover* – a case it cites with approval – holding that participation in an internal investigation may be protected under the participation clause only insofar is it relates to an extant EEO complaint.

The second Fourth Circuit decision relevant to the instant case is *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253 (4th Cir. 1998). There, a female employee, Ms. LaSauce, reported to a manager, Mr. Melton, that her direct supervisor had retaliated against her for providing testimony in an EEO action. After a brief internal investigation by Mr. Melton, Ms. LaSauce filed a formal EEO complaint. Both Ms. LaSauce and the EEO respondent subsequently resigned their positions and the EEO complaint was apparently resolved. Months later, the plaintiff, Mr. Melton's secretary, found certain documents on Mr. Melton's desk related to the respondent in Ms. LaSauce's former EEO case. Believing these documents evidenced a cover-up to prevent Ms. LaSauce from filing a lawsuit, the plaintiff made copies and mailed them to Ms. LaSauce. When her conduct was discovered by Mr. Melton, the plaintiff was fired. She subsequently filed suit, alleging retaliation.

On appeal, the plaintiff claimed that the district court erred by analyzing her protected activity under the opposition

clause rather than the participation clause.  As to that issue, the court explained:

> Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C.A. § 2000e-3(a). Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("The purpose of section 2000e-3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights." (internal quotation marks omitted)).
>
> Laughlin urges us to conclude that the district court erred when it did not characterize her removal of documents as participation in LaSauce's EEO claim. She argues that her actions were taken to assist LaSauce in her investigation. The evidence, however, does not support Laughlin's assertion. First, at the time the documents were removed from the desk, LaSauce was not involved in any ongoing investigation under Title VII. LaSauce had recently resigned from her position at the MWAA and had not yet filed suit. Second, LaSauce herself testified that she had not requested Laughlin's assistance and that she was surprised to receive the documents in the mail. There was quite simply no ongoing "investigation, proceeding or hearing" in which Laughlin could participate at the time she discovered the documents on her boss's desk. On that basis, we disagree with Laughlin's contention that her case should have been analyzed under the participation clause.

*Laughlin*, 149 F.3d at 259.

In the instant case, it is uncontroverted, if not undisputed, that when Plaintiff discussed the Kindelan/Keller matter with Ms. Cymber, Ms. Kindelan had just filed her internal complaint with the Agency's HRO, and the Agency's internal investigation did not commence for at least another month. Indeed, an EEO complaint was not filed by Ms. Kindelan until March 3, 2008. (Paper 5, Ex. 7 at 2). Thus, like the plaintiff in *Laughlin*, "[t]here was quite simply no ongoing 'investigation, proceeding or hearing' in which [Plaintiff] could participate" at the time she engaged in the only activity that could conceivably fall under the protection of the participation clause. *Laughlin*, 149 F.3d at 259; *see also Johnson v. Portfolio Recovery Assocs., LLC*, --- F.Supp.2d ----, 2009 WL 5726007, *18 (E.D.Va. June 12, 2009) ("Unlike *Clover*, Plaintiff's participation in any asserted internal investigation by Defendant prior to termination is not protected activity under the participation clause because any such asserted internal investigation must have occurred prior to, and therefore unrelated to, the filing of any EEOC charge"). Although the potential clearly exists that, despite the fact that no EEO complaint had been filed, Ms. Cymber's retaliatory conduct could have dissuaded Plaintiff from participating in the investigations that would follow, case law makes clear that the initiation of the EEO process by Ms. Kindelan was a virtual

prerequisite for Plaintiff's conduct to fall under the scope of the participation clause.

In sum, Plaintiff has failed to establish that she engaged in an activity covered under the participation clause of Title VII.  Because she does not allege that her activity was protected under the opposition clause – nor could she under these facts – she has failed to establish a *prima facie* case of retaliation.  Accordingly, Defendant's motion will be granted.

## VI.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment, construed as a motion for summary judgment, will be granted.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
